DREW, J.
| , John Wayne Farley was convicted of the crime of fourth offense DWI, La. R.S. 14:98(E), a relative felony requiring a unanimous six-person jury verdict. He was convicted by a nonunanimous 12-per-son jury. We pretermit consideration of the improper jury composition and reverse on other grounds, as the state was allowed to improperly argue for a conviction under La. R.S. 14:98(A)(l)(b), predicated upon a partial, preliminary, and incomplete BAC reading.
FACTS
On May 29, 2010, Farley caused an automobile accident in Caddo Parish. Because of a strong odor of alcoholic impurities on his breath, he was given field sobriety tests, placed under arrest, and taken to the selective enforcement office of the Shreveport Police Department (“SPD”). He refused to complete a breath test.[1]
*935 Farley was tried and convicted of the crime of DWI, fourth offense.[2]
DISCUSSION
1. Is a BAC of 0.08% or more a presumption of impairment, or is it an actual definition of the crime of DWI?
Statutory language exists to support the proposition that a BAC of 0.08% or more is merely presumptive evidence of the crime of DWI.[3]
^Statutory language also exists to support the proposition that a BAC of 0.08% or more is an actual definition of the crime of DWI.[4]
In short, the statutory language of Title 82 treats the 0.08% BAC as presumptive evidence of impairment. The language outlining the crime of DWI in Title 14 utilizes the 0.08% BAC as an actual definition of the crime. We accordingly conclude that the 0.08% or greater BAC referenced therein is definitional. Farley is charged with violating La. R.S. 14:98.
Farley’s right to a fair trial was prejudiced by the state’s improper argument that the illusory 0.17% BAC during the partial test triggered the 0.08% BAC presumption/definition under La. R.S. 14:98(A)(l)(b).
II. Was this issue preserved for appellate review?
The defendant filed a motion in limine, requesting the disallowance of evidence of the incomplete 0.17% BAC, as being unduly prejudicial.
III. Considering that the breath test was not completed, was it proper for the state to argue the 0.08% presumption/definition to the jury?
Evidence was allowed that the officer observed a partial and incomplete reading of 0.17% on the Intoxilyzer during the test, at which point Farley allegedly quit blowing into the machine. The prosecutor was | sallowed to improperly argue the BAC reading to the jury as proof of guilt under La. R.S. 14:98(A)(l)(b).[5]
*936 Consider these statements by the prosecutor:
• “And on the machine, the result that registered was .170. The legal limit for it to be considered driving while intoxicated is .08. It’s more than double the legal limit.”
• “Corporal McDonald saw what the result was, walked over to the camera and tried to zoom in, because he wanted it caught on tape, too, .170, more than twice the legal limit.”
• “So I’ll just reiterate, in Corporal McDonald’s experience, whenever somebody has all six clues and then submits to the Intoxilyzer, they blow at least .10 which is in excess of .08.”
The prosecutor also elicited this testimony from the officer who attempted to conduct the Intoxilyzer test:
“He didn’t blow long enough for the instrument to lock in the blood alcohol concentration, but I did observe his blood alcohol as he was blowing, as the instrument was measuring his blood alcohol, I did observe it go from zero, which it starts at zero, it went all the way from zero to a .170, which the state legal limit is .080.”
IV. Was use of the .170% BAC merely harmless error?
There was a great deal of evidence of Farley’s impairment. Even so, we cannot say that this BAC definitional argument (0.08% BAC and above) was not of critical importance in the jury’s deliberations. The abortive BAC reading may have been crucial to the guilty verdict.[6]
|4V. The Jury Charge and Subsequent Jury Instruction
The trial court read the text of La. R.S. 14:98(A)(l)(a), (b), and (c) to the jury in its basic charge, and then again when the jury asked for another reading of the DWI statute. On neither occasion did the trial court give a limiting instruction to consider the 0.17% BAC only as to the general question of whether the defendant was under the influence of alcoholic beverages, ie., the BAC reading could at most be considered as evidence of general impairment under R.S. 14:98(A)(l)(a), but could not be extrapolated to prove that Farley’s BAC was at or above the trigger point of 0.08%, thus violating R.S. 14:98(A)(l)(b).[7]
SUMMARY
Usage of the 0.17% partial reading to argue the violation of R.S. 14:98(A)(l)(b) was improper, and we cannot say that this egregious error did not taint the jury’s verdict. Arguing that a 0.17% BAC was over twice the legal limit was not merely “icing on the cake.” It was improper and unfair.
Since the jury was allowed to consider an ephemeral BAC reading to trigger a *937 conviction because the BAC reading was at least 0.08%, we cannot find that the defendant received a fair trial and we accordingly reverse.
DECREE
Defendant’s conviction is REVERSED. The case is REMANDED.

. The officer conducting the breath test briefly saw the machine register a reading of *935 0.17%. Since Farley did not blow long enough, the result did not "lock in.”

. The previous convictions allegedly occurred on October 20, 2010; October 29, 2009; October 20, 2009; February 16, 2009; September 15, 2004; and October 2, 2003.

. La. R.S. 32:662. Administering chemical tests; use of results as evidence
A. The chemical test or tests as provided for by this Part shall be subject to the following rules and shall be administered as provided for hereafter:
(1) Upon the trial of any criminal action or proceeding arising out of acts alleged to have been committed by any person while driving or in actual physical control of a vehicle while under the influence of alcoholic beverages the amount of alcohol in the person’s blood at the time alleged as shown by chemical analysis of the person's blood, urine, breath, or other bodily substance shall give rise to the following presumptions:
[[Image here]]
(c) If the person had a blood alcohol concentration at that time of 0.08 percent or more by weight, it shall be presumed that the person was under the influence of alcoholic beverages.
(Our emphasis.)

. La. R.S. 14:98 Operating a vehicle while intoxicated
A(l) The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance when:
[[Image here]]
(b) The operator's blood alcohol concentration is 0.08 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood[.]
(Our emphasis.)

. The prosecutor could have argued that Farley’s refusal to complete the test could be considered as evidence of guilt, but only on *936 the question as to his operating a motor vehicle while under the influence of alcoholic beverages, as prohibited by La. R.S. 14:98(A)(l)(a). See South Dakota v. Neville, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983). We note that ethanol readings taken from blood drawn for medical reasons, not in conformity with state regulations, can be used for limited purposes in a criminal prosecution. See State v. Marullo, 2005-1921 (La.3/10/06), 923 So.2d 638.

. The state points to the wealth of evidence showing impairment. This makes the state's improper argument even more unreasonable and unnecessary.

. The jury should not have been allowed to consider a conviction predicated upon La. R.S. 14:98(A)(l)(b), as no proper evidence was adduced under this subsection. Indeed, the evidence presented should have resulted in a limited jury charge referencing only the crime of prosecution under La. R.S. 14:98(A)(l)(a). (Our emphasis.)